BOOKER T. HOOD et al. v. STATE.

No. A-10398.　April 11, 1945.

(157 P. 2d 918.)

Paul O. Simms, of Vinita, for plaintiffs in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen and Paul Hugh, Asst. Attys. Gen., and Homer Melton, Co. Atty., of Vinita, for defendant in error.

BAREFOOT, P. J.   Defendants, Booker T. Hood and Helen Butler, were charged by information in the district court of Craig county with the crime of conjoint robbery; were tried, convicted and each sentenced to serve a term of five years in the State Penitentiary, and have appealed.

The following assignments of error are presented by defendants:

"1.   Irregularity in the proceedings of the court, jury and county attorney and abuse of discretion by which the plaintiffs in error were prevented from having a fair trial.

"2.   That the verdict is not sustained by sufficient evidence, and is contrary to law.

"3.   The failure of the state to prove any force or fear to justify a verdict of guilty as to a robbery charge."

It becomes necessary to give a short statement of the facts in this case.

Defendants, who are both negroes, were charged with robbing Donald Gregory, in the city of Vinita, on the night of August 6, 1942, between 9:30 and 10 o'clock.

As he crossed the Katy railroad tracks. the prosecuting witness was approached by a man and a woman. The man asked him for a match, and when he started to give him a match, the man ordered him to walk down the track. While going down the railroad track, the woman took his billfold out of his right hip pocket, and $30 from the billfold. The man and woman then ran behind some box cars. The prosecuting witness, Gregory, chased them and caught the woman some block and a half away from where the robbery was committed, and attempted to recover his money. She drew a knife, struck at him three times, and the prosecuting witness abandoned his attempt to recover the money, and went home. He changed his clothes, and returned to the Katy yards, and saw the colored watchman, Clyde Hardrick. The prosecuting witness testified:

"Q. What was his name? A. Hardrick, and I asked him if he had seen me chasing anybody down there. Q. What did he say? A. He said he. had seen people running, and he had an idea as to who it was."

No objection was made and no exception taken by the defendants to this testimony.

The witness then went to the police station and reported the occurrence to the police. Two police officers took him in a car and they went to see the watchman with whom the prosecuting witness had talked. The trial court sustained every objection of the defendants, and

did not permit the witness to testify to any conversation by himself or the officers with Clyde Hardrick, the watchman.

Later in the night, the officers arrested the defendants at a place known as "Blue Barbacue," or "Blue's Beer Garden." Both defendants were searched at the police station. Nothing was found on Helen Butler. They found $14 in currency and change on the defendant Hood. The prosecuting witness identified the money found on the defendant Hood as being a part of the money taken from him. This identification was made by reason of "some yellow streaks off my pocket." He further testified, when the money was introduced in evidence: "but that don't look like the money he had that night."

After the arrest of the defendants, the officers and the prosecuting witness went to the room in a hotel occupied by the defendants, and there prosecuting witness identified a dress and a pair of shoes as that worn by the defendant Helen Butler at the time of the robbery. She testified that she had been to her room prior to her arrest at "Blue's Place," but testified that she had not worn the dress or the shoes that night, or for some time.

Both defendants presented what is known in law as an alibi. They testified that they were riding together in a car until about 8:30. Hood testified that he got out of the car about 8:30 and played whist until about 10 o'clock, and then went to "Blue's Barbacue." Helen Butler testified that when Hood got out of the car, she went first to Blue's place, stayed a few minutes, and then went to the hotel room and stayed there until about 10:30, when she returned to Blue's place. They were arrested there about 10:30. Both of the defendants were transients, **and were occupying the same room at the hotel.** When

asked if Helen Butler was related to him, defendant Hood testified: "I just know her; she is a girl friend of mine."

It is contended by defendant that they did not have a fair trial by reason of a violation of art. 2, sec. 20, of the Constitution of the state, which provides:

"In all criminal prosecutions the accused shall have the right * * *, and be confronted with the witnesses against him."

And by reason of the violation of 22 O. S. 1941 § 13, which provides:

"In a criminal action the defendant is entitled: * * *

"3. To produce witnesses on his behalf, and to be confronted with the witnesses against him in the presence of the court."

It is contended that by reason of the opening statement of the county attorney, and his failure to place upon the witness stand Clyde Hardrick, whose name was endorsed on the information as a state's witness, that the constitutional and statutory provisions above quoted were violated.

It is not necessary for the state to place upon the witness stand all of the witnesses whose names are endorsed upon an information. If the defendants deemed that any of those witnesses would give evidence favorable to them, and they desired to use them as witnesses, it was their duty to issue a subpoena for them, and not rely upon their use by the county attorney so that they would have the privilege of cross-examining them. No subpoena was issued by the defendants for the witness Hardrick. The mere fact that the county attorney in his opening statement made reference to this witness by name, and to statements made by him in the presence of the defend-

ant, is not sufficient for the defendants to conclude that he would be used by the state as a witness in the case.

It will be noted from the evidence above quoted that the defendants did not object or except to the testimony of the prosecuting witness with reference to the statement made by the witness Hardrick; and when the state attempted to introduce in evidence statements made by Hardrick to the police officers the court promptly sustained all objections to this testimony as hearsay, and did not permit it to be introduced.

After the state had rested, no effort was made by defendants to secure the evidence of the witness Hardrick, nor was any delay asked that his evidence might be secured. We find that the court did not err in refusing to sustain the motion of the defendants; and that the defendants were not deprived of any constitutional or statutory right by reason of the failure of the state to place the witness Hardrick on the stand.

The second assignment of error, that the verdict is not sustained by sufficient evidence and is contrary to law, is based upon the fact that the evidence against the defendants was circumstantial, and the identification of the dress and shoes of the defendant Helen Butler, and of the money found on the person of the defendant Hood were not sufficient.

It may be admitted that the evidence in this case is not strong. The robbery was committed in the nighttime, and at a place where it was dark. The prosecuting witness was positive in his identification of the dress and shoes of the defendant Helen Butler, and of the fact that the money taken from the person of the defendant Hood was the same money taken from his person at the time

of the robbery. This identification was made by reason of certain "acid stains" gotten there while he was working at the DuPont Powder Plant, where prosecuting witness worked. And while this witness on cross-examination answered some questions in a manner that might have had a tendency to weaken his testimony, yet the jury had the opportunity to hear all the facts and circumstances and they were sufficient to sustain the judgment and sentence.

We recognize the general rule that where the state relies for conviction upon circumstantial evidence, all the facts and circumstances must be consistent with the guilt of the accused, and inconsistent with any other reasonable hypothesis except the guilt of the defendant. Sears v. State, 79 Okla. Cr. 437, 156 P. 2d 145; Edison v. State, 77 Okla. Cr. 401, 142 P. 2d 141; Key v. State, 22 Okla. Cr. 284, 210 P. 1044.

We call attention to the fact that in the instant case we have positive and direct testimony by the prosecuting witness, in addition to the circumstantial evidence. The defendant Hood testified to bringing to Vinita the sum of $30, which was the exact amount taken from the prosecuting witness. They were arrested in close proximity to where the crime was committed. Both defendants were transients, stopping in the same room at the hotel, and the inference is that they were not married. A knife was found in the pocket of Hood, and two other knives were discovered in their room at the hotel, one of which Helen Butler admitted belonged to her. All of these circumstances, when taken into consideration with the testimony of the prosecuting witness, were sufficient to justify the jury in coming to the conclusion that the defendants were the parties who robbed Donald Gregory.

The jury was fully instructed on the question of circumstantial evidence, and it is not the policy of appellate courts to set aside a verdict of a jury where they have determined the facts and rendered a verdict of guilty, and the facts are sufficient to sustain the verdict and the judgment and sentence. Belt v. State, 59 Okla. Cr. 69, 56 P. 2d 910; Armstrong v. State, 61 Okla. Cr. 352, 68 P. 2d 114; Spann v. State, 69 Okla. Cr. 369, 103 P. 2d 389.

It is next contended that the state failed "to prove any force or fear to justify a verdict of guilty as to a robbery charge."

21 O. S. 1941 § 791 defines robbery as follows:

"Robbery is a wrongful taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."

And 21 O. S. 1941 § 792 provides:

"To constitute robbery, the force or fear must be employed to obtain or retain possession of the property, or to prevent or overcome resistance to the taking. If employed merely as a means of escape, it does not constitute robbery."

The facts and circumstances under which this crime was committed have been heretofore outlined. From these facts and circumstances it is established that the crime of robbery was committed. It was demanded of the prosecuting witness that he walk down the railroad tracks. It was dark. The natural inference is that he obeyed by reason of fear for his personal safety. While doing as commanded, by reason of fear, the sum of $30 was taken from his pocket and billfold. There was no stealth in the taking, but it was permitted through fear of bodily harm. When the prosecuting witness Gregory pursued the woman

who had taken his money, and caught her, and attempted to recover his money, she struck at him three times with a knife held in her hand, forcing him to desist in his efforts to recover his money. Certainly this state of facts was sufficient to come within the provisions of the statute defining robbery. The "force or fear" necessary to constitute robbery may be employed either to obtain or retain possession of the property, or to prevent or overcome resistance to the taking. 21 O. S. 1941 § 792, above quoted. It is not necessary that both force and fear be employed. People v. Borra, 123 Cal. App. 482, 11 P. 2d 403.

Finding no substantial error in the record, the judgment and sentence of the district court of Craig county is affirmed.

JONES, J., concurs. DOYLE, J., not participating.